UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) Case No. 12-cr-109 |
| v. | ) Judge Sharon Johnson Coleman |
| HEON SEOK LEE, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

The defendant, Heon Seok Lee, was indicted by a grand jury on five counts of wire fraud in violation of 18 U.S.C. § 1343 and three counts of smuggling mislabeled goods into the United States in violation of 18 U.S.C. § 545 and 19 U.S.C. § 1304. Lee now moves to dismiss the indictment based on his assertion that the grand jury testimony was false or misleading. For the reasons set forth herein, that motion [82] is denied.

**Legal Standard**

A federal court's supervisory power over a grand jury is limited, and a federal court can dismiss a grand jury indictment because of misconduct before the grand jury only where that misconduct constitutes a violation of one of those "few, clear rules which were carefully drafted and approved by [the Supreme Court] and by Congress to ensure the integrity of the grand jury's functions . . ." *United States v. Williams*, 504 U.S. 36, 46, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992) (*quoting United States v. Mechanik*, 475 U.S. 66, 74, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986) (O'Connor, J., concurring in judgment)). A district court's supervisory power may not be used to meddle in the grand jury's decision by reviewing the sufficiency of the evidence underlying an indictment. *Costello v. United States*, 350 U.S. 359, 364, 76 S.Ct. 406, 100 L.Ed. 397 (1956).

1

It is well established that the government may not knowingly present false testimony or fail to correct testimony that is known to be false. *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). That general obligation extends to testimony presented to a grand jury, and its violation may warrant dismissal of the indictment. *United States v. Hogan*, 712 F.2d 757, 762 (2nd Cir. 1983). However, a district court may not dismiss a grand jury indictment based on such misconduct unless the errors in the proceeding prejudiced the defendant. *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988). Prejudice exists when the alleged violations have a substantial effect on the grand jury's decision to indict or when it is "quite doubtful" that the decision to indict was uninfluenced by the violation. *United States v. Brooks*, 125 F.3d 484, 498 (7th Cir. 1997).

**Discussion**

The "Buy American" provision of the American Recovery and Reinvestment Act (ARRA) provides that:

> None of the funds appropriated or otherwise made available by this Act may be used for a project for the construction, alteration, maintenance, or repair of a public building or public work unless all of the iron, steel, and manufactured goods used in the project are produced in the United States.

Pub. L. 111-5, § 1605.

The EPA, adopting OMB guidance, has stated that "in the case of a manufactured good that consists in whole or in part of materials from another country, [the good must be] substantially transformed in the United States into a new and different manufactured good distinct from the materials from which it was transformed." (Dkt. 85-1) (*citing* 2 C.F.R. § 176-160(a)).[1]

---

[1] Lee contends that the interpretation of ARRA is governed by the Federal Acquisition Regulation. *See* 70,002.125 Federal Acquisition Circular 2005-45, Cont.Cas.Fed. (CCH) P 700002.125. The Federal Acquisition Regulation, however, only governs the acquisition of supplies and services by federal executive branch agencies, and thus has no bearing on this case. The allegedly false certifications were directed towards the EPA, and thus it is the EPA's guidance that governs.

2

During the grand jury proceedings, Agent Lambert testified as follows:

> Q: Turning back to the American Recovery and Reinvestment Act. There's a specific provision in there, Section 1605, that requires that goods purchased with ARRA funds be made in the United States; is that correct?
> A: Correct.
> Q: And is it correct that ARRA required substantial transformation to occur in the United States?
> A: Correct.
> Q: And have you reviewed guidelines from the EPA regarding the requirements for substantial transformation?
> A: I have.
> Q: Does simply testing an item in the United States meet the requirements of substantial transformation?
> A: It does not.

(Dkt. 84-1, p. 8). Joel Schomo, a former KTurbo employee, testified "While I was employed at KTurbo I gained experience and did research on what substantial transformation meant. While I was employed at KTurbo I knew that testing or simple assembly of United States—in the United States did not amount to substantial transformation." (Dkt. 84-2, p. 9).

And finally, former KTurbo employee Kim Woelfer testified:

> Ms. Woelfer: Part of the ARRA requirements were substantial transformation. You couldn't bring a South Korean blower over complete. What you could do was send all the parts over and have U.S. workers assemble it in the U.S. and substantially transform it from the raw parts into a finished unit. That met the requirements for funding.
> AUSA: Okay. And if they came over complete - -
> Ms. Woelfer: That was a violation of the ARRA agreement.

(Dkt. 84-3, p. 33).

Lee contends that Lambert's testimony was false because, although Lambert testified that ARRA requires that goods purchased with ARRA funds be "made" in the United States, the actual text of the Act requires only that manufactured goods be "produced" in the United States. Lee, however, fails to argue how this distinction is meaningful, let alone how it is material or prejudicial. Accordingly, this Court holds that that statement is not a ground to suppress the indictment. *See*

*United States v. Turcotte*, 405 F.3d 515, 536 (7th Cir. 2005) ("In this circuit, unsupported and undeveloped arguments are waived.").

Lee primarily contends that Lambert, Schomo, and Woelfer's testimony was false because, although all three stated that testing a product did not constitute a "substantial transformation," there is no bright line rule establishing that testing a product cannot constitute a substantial transformation. While it is true that no bright line rule explicitly states that testing a product does not cause a substantial transformation, it is also readily apparent from the applicable regulatory guidance that testing a product, absent more, could not constitute a substantial transformation because it does not result in "a new and different manufactured good distinct from the materials from which it was transformed." *See, e.g.,* Customs Service Decision 80-227, 14 Cust. Bull. No. 49 at 19-20 (1980) (holding that testing and marking imported components did not effect a substantial transformation). Indeed, under the EPA's guidance even simple assembly operations are inadequate to result in a substantial transformation. Thus, the witnesses' statements that testing an item in the United States could not constitute a material transformation absent additional transformative activities were not false or misleading.

Lee contends that Woelfer's testimony that blowers assembled abroad could not satisfy ARRA was misleading because completed goods "assembled" abroad could still satisfy ARRA if they underwent an activity constituting "manufacturing" in the United States. Lee's argument, however, misinterprets the testimony. Woelfer's testimony, which was in response to a grand juror's question, was responding to the facts of this case (in which Lee allegedly represented that a product would be assembled in the United States from foreign components but instead imported completed products that were assembled abroad). Woelfer was not stating that, as a blanket rule, imported goods assembled abroad could never satisfy ARRA's requirements. His testimony thus was not, as

4

Lee appears to assume, a general statement of the law, and therefore was not false or misleading when properly taken in context.

Lee further contends that Woelfer and Schomo's testimony was misleading because it implied that their statements were statements of established law and not their opinions as to what constituted ARRA compliance. To the contrary, in context both Woelfer and Schomo's statements clearly signaled that their interpretation of the law was their own. Schomo, for instance, prefaced his testimony about the substantial transformation requirement by stating that he was testifying about what he "knew" while he was employed at KTurbo. Similarly, Woelfer repeatedly prefaced her comments about ARRA with cautionary language explicitly stating that she was describing her understanding of the law. And neither Schomo or Woelfer, both engineers by trade, gave any indication that they had specialized knowledge or skill that would lend their interpretation of the law any authoritativeness. Even if Woelfer and Schomo's testimony had been misleading, moreover, Lee has not plausibly alleged how he would have been prejudiced given that Woelfer and Schomo's statements of the law were not in-and-of themselves false or misleading and mirrored Lambert's description of ARRA's requirements.

Lee also contends that certain statements made by Schomo and Lambert falsely implied that KTurbo contracted directly with the cities where KTurbo blowers were to be installed. This, Lee contends, is significant because sub-recipients which receive ARRA funds directly from municipalities are subject to different requirements than vendors who sell products that are used in federal programs. This distinction is irrelevant, however, because the distinction between sub-recipients and vendors was never placed at issue before the grand jury and has no bearing on the truthfulness of the allegedly fraudulent certifications at issue in this case.

Finally, Lee contends that the aforementioned misleading testimony about "substantial transformation" calls into question his indictment for smuggling because it impacts the "country of

origin" and "ultimate purchaser" analyses under 19 U.S.C. § 1304. Because the witnesses' statements about the meaning of "substantial transformation" were not false or misleading, they have no bearing on the validity of Lee's indictment for smuggling mislabeled goods into the United States.

**Conclusion**

For the foregoing reasons, the defendant's motion to dismiss the indictment [82] is denied.



SO ORDERED.

SHARON JOHNSON COLEMAN
United States District Court Judge

DATED: September 6, 2016