**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>HEON SEOK LEE ) | No. 12 CR 109<br><br>Judge Sharon Johnson Coleman |

**DEFENDANT'S MOTION TO DISMISS INDICTMENT**

By and through his attorney of record, defendant Lee hereby moves this Court to dismiss the indictment against him. In support thereof, defendant states as follows:

**I. INTRODUCTION**

This indictment stems from the government's inaccurate belief that K Turbo USA which was a subcontractor of contractors who had contract with the municipalities that were receiving ARRA fund, was a recipient of ARRA fund. Similarly, despite the fact that K Turbo USA is a wholly owned subsidiary of K Turbo which is not a private company of Mr. Lee but a South Korean corporation with over 250 shareholders at the time of the indictment, shareholders including Korea development Bank, which is 100% owned by the South Korean government, private equity fund, and a venture capital investment fund[1], the government somehow decided to charge Mr. Lee. It is truly baffling why the United States government is charging Mr. Lee, an individual who owns less than 30% of the shares of K Turbo. As a result of the government's misunderstanding, this entire indictment and all the charges therein are invalid and they are complete legal impossibility. The indictment therefore must be completely dismissed.

---
[1] See Exhibit A Shareholder list of K Turbo as of 2011 in Korean and English translated version

## II.     ARGUMENT

**A. Invalidity of Indictment #1: EPA is not a decision-making body**

The government in page 3 of its indictment (Docket 2) paragraph 2 declares that:

> "LEE devised a scheme to defraud *municipalities and the United States* and to obtain money…by means of materially false and fraudulent pretenses, representations, and promises,…used the use of interstate wire transmissions…"(Emphasis supplied)

The government is declaring that municipalities and the United States are the victims of defendant Lee's fraudulent scheme. The government in their Affidavit in Support of Request for Extradition[2] page 5 paragraph 15 defines that "a false statement is material if it has a natural tendency to influence, or is capable of influencing, the *decision of the decision-making body* to which it was addressed." (Emphasis supplied) Pursuant to the guidance issued by the EPA, EPA is not a decision-making body when it comes to ARRA compliance.

A guidance[3] issued by the EPA states as follows:

> Recipients are responsible for compliance with Buy American Provisions of ARRA.
>
> EPA Role: EPA does not and will not make determinations as to substantial transformation or the U.S. or foreign origin of manufactured goods.
>
> Assistance Recipients' Role: SRF assistance recipients bear the direct responsibility to comply with the Buy American requirement of §1605

Because the EPA is not a decision making body, there was no fraud against the EPA and in turn against the United States. And since the Count 6 through 8 deal with

---

[2] See Exhibit B attached with this Motion
[3] See Exhibit C page 2 and 3.

smuggling which requires intent to defraud the United States, those charges also cannot be constituted because there was no fraud against the United States.

Also, the government in page 7 of its Indictment paragraph 12 declares that

> "Lee… knowingly… caused to be transmitted by means of a wire communication in interstate commerce… an email communication from sales representative SC **to a representative of the municipal wastewater treatment facility** for Pendleton, Oregon, which email communication attached a false 'Buy American' certification; in violation of title 18, United States code, sections 1343 and 2."

In an Invitation to Bid prepared by the city of Pendleton, the city states as follows:

> "The project is funded in part by… American recovery and reinvestment act (ARRA). Contractors shall comply with all… ARRA requirements on the project."

The invitation then states owners representative as Bob Patterson, P.E.[4]
The invitation to bid document clearly defines who the representative of the city of Pendleton's wastewater treatment facility is.

     Defendant Lee did not cause to be transmitted by email to a representative of the municipal wastewater treatment facility for the city of Pendleton. Therefore the government's indictment for wire fraud fails. In fact, even the government's own affidavit of investigator proves this point. Special Agent Rumple provided an affidavit for extradition request. In his affidavit paragraph 49, Rumple states that: "… Montanaro sent this email message *to the construction company* hired by Lowell…"
Note that the only time K Turbo USA ever made email communication with Bob Patterson was to submit a letter of intent by its sales representative and that email did not contain any certification.

---

[4] See Exhibit D page 1

**B. Invalidity of Indictment #2: Defendant is not a recipient of ARRA fund**

The following are important and relevant definitions concerning the ARRA:

2 CFR 200.92: "Subaward means an award provided by a pass-through entity to a subrecipient … It does not include payments to a contractor … "

2 CFR 200.74: "Pass-through entity" means a non-Federal entity that provides a subaward to a subrecipient to carry out part of a Federal program.

2 CFR 200.93: "Subrecipient means a non-Federal entity that receives a subaward from a pass-through entity to carry out part of a Federal program; …"

2 CFR 910.501 (f): "…The payments received for goods or services provided as a contractor are not Federal awards. …"

2 CFR 200.23: "Contractor means an entity that receives a contract."

2 CFR 200.330 (b): "Contractors …(5) Is not subject to compliance requirements of the Federal program as a result of the agreement, though similar requirements may apply for other reasons."

78 Fed. Reg. 78590 (Dec. 26, 2013): Contractor and Vendor is synonym :

If one parses the above definitions, they provide that whoever a contractor contracts with, that contractor is not receiving an award. In other words, a contractor is not and does not become a subrecipient. The municipalities are receiving an award, free money from the federal government that they do not have to pay back. The municipalities are clearly recipients of an award. The contractors who contracted with those municipalities are not subrecipient because they are merely getting paid for the goods or services they provided. And that is the definition provided in 2 CFR 910.501 (f). And as a contractor, it does not have obligation to comply with ARRA fund requirements. It only has contractual duties and responsibilities. So if contractor does not comply with the

contract it entered, then it would be a breach of contract but such breach would not constitute a violation of law.

To apply the above conclusion to this matter, K Turbo USA entered into a contract with contractors (its customers). And those contractors had contract with the municipalities. The municipalities are recipients of ARRA fund. However, the contractors were not subrecipients and they themselves were under no obligations and requirements of the ARRA. K Turbo USA as sub-contractor of course was not a subrecipient and therefore also under no obligation to comply with the Buy American Act. There is an expert's opinion secured by defendant from the law from Crowell and Moring[5]. After careful review of all documents, the firm issued the following opinion:

> Because both KTURBO and its customer (the prime contractor on the project or higher-tier contractor) were vendors, they were **not subject to or responsible for compliance with the ARRA requirements**, which were instead the responsibility of the recipient and (where applicable) sub-recipient.
> By characterizing KTURBO as receiving ARRA funds and having direct contracts with the municipal entities, the Government made it appear that KTURBO had a level of responsibility that it did not.

### C. Invalidity of Indictment #3: No violation of 18 USC 2

The government also claims that K Turbo USA is in violation of 18 USC section 2.

18 U.S. Code § 2 – Principals states that:

**(a)** Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

**(b)** Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

---

[5] See Exhibit I

In the Affidavit in Support of Request for Extradition in page 7 paragraph 21 the government claims as follows:

> "Each count of the indictment charges that *Lee was a principal in the commission of the offenses by aiding and abetting the crimes* as provided by title 18, United States code, section 2. United States code, section 2 states that whoever commands, procures, assisting, or causes the commission of a crime shall be held accountable and punished in the same manner as the principal, or the person who actually carried out the task. This means that the guilt of Lee may also be proved even if he did not personally perform every act involved in the commission of the crime charged."

The above statement made by the government makes absolutely no sense. The government claims that "each count of the indictment charges that Lee was a principal in the commission of the offenses by aiding and abetting the crimes as provided by title 18 USC 2." The code actually states that if one commits an offense against the United States or aids, than such person is *punishable* as a principal which means that even if you are not the principal of a crime against the United States if you aided it or abetted then you could be *punishable* as if you were the principal. The Code does not say that Lee was a principal in the commission offenses by aiding and abetting the crimes. The government's statement is absolutely ludicrous. It is impossible to aid oneself. US Attorney's manual 2479 provides that "There must be a guilty principal before there can be aider and abettor. *United States v. Washington*, 106 F.3d 983, 1003 (D.C. Cir.), *petition for cert. filed*, (July 29, 1997) (No. 97-5423)." Again, the government in the affidavit states that Lee was a principal in the commission of the offenses by aiding and abetting the crimes. The government's statement is such a complete nonsense. The prosecution must be sanctioned for making an affidavit with such a statement.

The violation of 18 USC 2 in this case, is based on the theory that KTurbo USA is a recipient of the recovery act funds and as a recipient of ARRA fund, since it did not substantially transform or manufactured the blowers in the United States, it therefore violated section 1605 (a) of the Recovery Act. If it is proven that K Turbo USA is not a recipient of the recovery act funds, then 18 USC section 2 is not applicable. Based on the argument made above, namely that K Turbo USA is not a recipient of ARRA fund, no violation of 18 USC section 2 is committed.

### D. Invalidity of Indictment #4: K Turbo USA is not a private company of Lee

K Turbo USA is wholly owned subsidiary of K Turbo, Inc. which is a South Korean corporation. K Turbo, Inc. has over 250 shareholders with over 6 million shares outstanding as of year 2011[6].

The indictment claims that LEE obtained all the blower payment from city and LEE imported blowers. But, it is legal impossibility, because KTurbo USA is a corporation. Even if the government's claims were true, it would be K Turbo USA that had committed the crime and not Mr. Lee. Therefore, ARRA fund fraud and Smuggling by LEE were not committed.

The government throughout the history of this case made the following written statements against defendant:

> "10. …defendant HEON SEOK LEE intended to fraudulently obtain Recovery Act stimulus funds in excess of approximately $1,337,189.
>
> defendant … cause to be transmitted … an email communication from Sales Representative SC to a representative of the municipal wastewater treatment facility …; In violation of Title 18, United States Code, Sections 1343 and 2.

---

[6] See Exhibit A.

7

> defendant … did import and bring into the United States certain merchandise, … in violation of Title 19, United States Code, Section 1304; All in violation of Title 18, United States Code, Sections 545 and 2.
>
> Docket #: 24: … defraud using his company…, used his companies to smuggle mismarked …
>
> Declaration in support of request for the extradition of Heon Seok Lee: II.D.13. … I will note the count or counts of the indictment that correspond to the blowers sold by LEE to these cities,.."

As stated previously, it was K Turbo USA which imported blowers from South Korea, not Mr. Lee. Also Mr. Lee never sold himself any of those blowers. There is absolutely no reason why Mr. Lee, an individual, is being held responsible for alleged crimes the government claims to have been committed by K Turbo USA.

### E. Invalidity of indictment #5: Mislabeling Is Not Smuggling

The government also brought charges of smuggling under 19 USC 1304.

Under "Marking of imported articles and containers," 19 USC 1304 states in pertinent part:

> (a) Marking of articles [E]very article of foreign origin imported into the United States shall be marked in a conspicuous place as legibly, indelibly, and permanently as the nature of the article will permit in such manner as to indicate to an ultimate purchaser in the United States the English name of the country of origin of the article.

However, this provision also provides for specific criminal violations in subsection (l):

> (l) Penalties
> Any person who, with intent to conceal the information given thereby or contained therein, defaces, destroys, removes, alters, covers, obscures, or obliterates any mark required under the provisions of this chapter shall—
>
> (1) upon conviction for the first violation of this subsection, be fined not more than $100,000, or imprisoned for not more than 1 year, or both; and
> (2) upon conviction for the second or any subsequent violation of this subsection, be fined not more than $250,000, or imprisoned for not

more than 1 year, or both.

Defendant retained attorney Thomas M. Keating who as a customs lawyer with 33 years of experience provided his legal opinion regarding the matter. Below is his expert opinion[7].

> Any imported merchandise mislabeled at the time of importation with an "Assembled in USA" claim is subject to several separate civil remedies. Marking duties of 10% ad valorem can be assessed pursuant to 19 USC §1304(h). Demands for redelivery of the merchandise can be made pursuant to 19 CFR § 141.113, with potential liquidated damages for non-compliance. Seizures of the merchandise can also be made in limited circumstances pursuant to 19 USC §1595a.
>
> *However, any criminal penalties for alleged violations pursuant to 19 USC §1304 are limited specifically to those in 19 USC §1304(l) above for the removal, etc. of any required country of origin markings after the importation of the merchandise which is neither alleged in the indictment nor occurred in fact.*
>
> In reviewing case law involving both 18 USC §545 and 19 USC §1304, I have found no cases that address the mislabeling of a country of origin. Cases involving Section 545 focus primarily on the intent to smuggle and defraud or purposefully mislead the United States Customs Service. As a result, in our opinion, any violation of 19 USC §1304, other than 19 USC §1304(l), cannot constitute a smuggling violation actionable under 18 USC§545.

Defendant believes the expert's opinion letter is self-explanatory and should confirm that the charges of smuggling is indeed invalid.

### F. Invalidity of indictment #6: Lack of Jurisdiction & Perjury

During the grand jury investigation, assistant United States attorney Mr. OTLEWSKI took testimony of Amy Lambert who is a special agent for the Department of Homeland

---

[7] See Exhibit F Mr. Keating's expert opinion letter

Security. Mr. OTLEWSKI asked the questions and Special Agent Lambert answered them. The following is excerpts from the grand jury testimony[8]:

> Q: Did -Pendleton, Oregon contract with KTurbo to use those funds to purchase blowers from KTurbo?
> A: They did.
> Q: What exactly did Pendleton Oregon contract to purchase from KTurbo?
> A: Three turbo blowers.

Pendleton, Oregon did not contract with K Turbo. No such contract exists. Special Agent Lambert's testimony before the grand jury therefore is a perjury and causes the indictment to be defective.

During the grand jury testimony by Kim WOELFFER, a grand juror asked this question[9]:

> A GRAND JUROR:… Because it sounds more like it's a contracting dispute. This is federal because it's all past state lines work international?
>
> Mr. Otlewski:… When ARRA becomes involved, it becomes a federal case.
>
> A GRAND JUROR: Okay. Gotcha.

Neither defendant nor K Turbo USA were recipient of ARRA fund. Therefore, the grand jury testimony was defective and this indictment is defective.

Further, in the request for standards subpoena the following language was used:

<u>Request for Standard Subpoena</u> : SUBRQ_001-000132

In order to be awarded **ARRA-funded contracts,** companies such as **KTurbo, Inc. are required to ensure municipalities and the EPA** that they meet the Buy American standards under ARRA by manufacturing their products within the United States.

---

[8] See Exhibit G Excerpt from grand jury testimony
[9] See Exhibit H

KTurbo, Inc. has been awarded numerous contracts because they have assured municipalities that their blowers were substantially transformed at their U.S. facility in Batavia, Illinois… HSI estimated KTurbo, Inc. has been **awarded** over **$2 million in ARRA-funded contracts.**

The problem with the above language is that it is ARRA funded construction project. However, it is not ARRA funded contract because the contract does not show ARRA fund payment. In other words, just because a project is funded by ARRA, that does not mean all of the contracts of such ARRA funded project are ARRA funded contract.

G. **Invalidity of Indictment #8: Violation of Extradition Treaty**

Defendant Lee is a national of South Korea. The United States government requested South Korea government to extradite Mr. Lee to the United States so that it could prosecute Mr. Lee. As part of the extradition treaty, there are certain things that the United States government had to provide to the South Korean government in order to extradite Mr. Lee.

The Korean government allowed extradition of Mr. Lee to the United States under the 3 following offenses: 1) fraud against the city, 2) providing false certification to city, 3) importing goods without country of origin sign.

This Court lacks jurisdiction because none of the offenses described above were committed.

In addition, in order for the extradition treaty to work the crime defendant is accused of committing has to be a crime in both countries. This is called dual criminality and it stated in article 2 extraditable offenses. When a crime is a crime in only one of the countries and not then that it is a violation of extradition treaty. In this case, mislabeling is not a crime in Korea.

    H. **Invalidity of Indictment #9: Certification is not valid, because Government is not 3rd Party Beneficiary**

The certification K Turbo USA provided to the contracting company contains the following language:

MANUFACTURER'S BUY AMERICAN CERTIFICATION

…**KTurbo USA, Inc.** hereby **represents** and wARRAnts **to and for the benefit of Owner and Pizzagalli Inc.** that …(b) all of the iron, steel, and manufactured **goods** specified which KTurbo USA, Inc. proposes to provide for the project **will be** and/or have been **produced in the United States in a manner what complies with the Buy American Requirements**…

This is Invalid Certification, because KTurbo did not agree to 3rd party beneficiary to the municipality in its contract with its customers. This certification is what the municipality demanded to contractors. The contractors simply changed the name and provided to K Turbo USA. The content of the certification it's as if the certification is to owner (city). However city is not a third-party beneficiary and therefore it is illegal and is a fraud against K Turbo USA. When contractor provide certification to municipality such certification contains third-party beneficiary which is a state government. That is why "to/for the state" language has a meaning. However that's not the case in case of certification from K Turbo USA.

Similarly, the certification copied below is illegal, because contractor and its subcontractors are not recipients.

Buy American Requirements – Certification of contractor

…. The Act includes "Buy American" provisions in section 1605 that require **funding recipients (including the undersigned and its subcontractors)** to use iron, ...

APOLO 006-001198

**APPENDIX E: BUY AMERICAN CONTRACT LANGUAGE**

The Contractor acknowledges **to and for the benefit of the City of Pendleton ("Purchaser") and the State of Oregon (the "State")** that it understands the goods and services under this Agreement are being funded with monies made available by the federal American Recovery and Reinvestment Act of 2009 (ARRA) (or are being made available for a project being funded with monies made available by the federal ARRA) …. **The Contractor hereby represents** and wARRAnts to and **for the benefit of the Purchaser and the State** that … (b) all of the iron, steel, and manufactured goods used in the project will be or have been produced in the United States in a manner that complies with the Buy American Requirements, … **any failure to comply with this paragraph by the Contractor shall permit the Purchaser or State to recover as damages against the Contractor any loss, expense or cost** (including without limitation attorney's fees) incurred by the Purchaser or State resulting from any such failure (including without limitation any impairment or loss of funding, whether in whole or in part, from the State or any damages owed to the State by the Purchaser). **While the Contractor has no direct contractual privity with the State, as a lender to the Purchaser for the funding of its project, the Purchaser and the Contractor agree that the State is** *a third-party beneficiary* and neither this paragraph (nor any other provision of this Agreement necessary to give this paragraph force or effect) shall be amended or waived without the prior written consent of the State.

### III. CONCLUSION

The government acted without accurate knowledge and understanding of relevant regulations and it interfered with contracts between private entities which the government had no privity. Such meddling led to severe and dire consequences. Due to the government's defective indictment, K Turbo is under court receivership in Korea and the shareholders of K Turbo lost huge amount of money. The government unlawfully seized K Turbo's assets which was another blow to K Turbo's business. The United States will have to pay Mr. Lee and K Turbo's damages which defendant estimates will reach literally in the hundreds of millions of dollars. Defendant Lee had been incarcerated and still is under house arrest. After dismissal of his indictment, there will have to be an accounting for the grave mistakes and perjury committed during the grand jury proceeding.

WHEREFORE, plaintiff prays that this court grant defendant's Motion and dismiss the government's invalid and defective indictment and order any further relief this Court deems proper and just.

                Respectfully submitted,

                /s/Ryan J. Kim
                Ryan J. Kim, Esq.

RYAN J. KIM, ESQ.
INSEED LAW P.C.
2454 E. Dempster St. Suite 301
Des Plaines, Illinois 60016
Telephone: (847) 905-6262
ryan@inseedlaw.com
ATTORNEY FOR DEFENDANT