UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 12 CR 109 |
| v. | ) | |
| | ) | Judge Sharon Johnson Coleman |
| HEON SEOK LEE | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S RULE 33 MOTION**

The United States of America by its attorney, Joel R. Levin, Acting United States Attorney for the Northern District of Illinois, respectfully submits this response to defendant Heon Seok Lee's motion under Federal Rule of Criminal Procedure 33 for a new trial. *See* R. 180. For the following reasons, the government respectfully requests that the Court deny the motion.

## I.  BACKGROUND

Defendant Heon Seok Lee was charged by indictment on February 16, 2012, with five counts of wire fraud, in violation of 18 U.S.C. § 1343 (Counts 1 through 5), and three counts of smuggling mismarked merchandise into the United States, in violation of 18 U.S.C. § 545 (Counts 6 through 8). R. 2. In 2015, the government obtained defendant's extradition from the Republic from South Korea, and defendant was brought to the United States. Defendant's trial on the charges contained in the indictment began March 6, 2017. After an eight-day trial, a jury returned verdicts of guilty on all counts of the indictment. Defendant has now moved for a new trial under Federal Rule of Criminal Procedure 33. *See* R. 180.

The trial evidence proved that, in an effort to combat the Great Recession of 2008, Congress passed the American Recovery and Reinvestment Act of 2009

1

("ARRA"). Under ARRA, billions of dollars in stimulus funds went in a number of different directions and included the disbursement of funds to municipalities and other local governments for the construction and renovation of wastewater treatment facilities through clean-water revolving loans and grants administered by states and the EPA. In order to receive ARRA funding to upgrade/improve wastewater treatment facilities, municipalities had their general contractors and engineering firms confirm that the contractors, subcontractors, and vendors provided manufactured goods that complied with the "Buy American" provision in ARRA, which required that manufactured goods be "substantially transformed" in the United States of America. General contractors and engineering firms complied by using ARRA certificates, which were typed documents signed by representatives from subcontractors and vendors, in which the subcontractors and vendors confirmed that they would comply with the requirements of ARRA for the manufactured goods for the projects. The general contractors and engineering firms collected these certificates from subcontractors and vendors, and, when necessary, provided them to the municipalities to confirm ARRA compliance. The federal EPA, in turn, conducted audits and reviewed the certificates.

Defendant was the president and CEO of KTURBO and KTURBO USA (collectively, KTURBO). He started, ran and exercised managerial control over both companies. He designed and managed the design of KTURBO's primary product and its technology, which consisted of an aeration blower. KTURBO originated in the Republic of Korea, where defendant had his main offices, his assembly and

manufacturing plant, and over 100 employees. Defendant eventually decided to expand operations to the United States where defendant chose to enter the municipal wastewater treatment market.

As the evidence at trial established, defendant sought to fraudulently obtain federal stimulus funds that had been distributed to states and municipalities through ARRA. Defendant, through KTURBO, bid on and won contracts to provide blowers for placement in municipal wastewater treatment facilities and, along the way, falsely represented that KTURBO's aeration blowers would be and were substantially transformed in the United States. In truth, as defendant knew and directed, KTURBO fully assembled its blowers in the Republic of Korea, but nonetheless placed placards stating the blowers were "Assembled in USA", *then* shipped the fully-assembled blowers from South Korea to the United States, for distribution to municipalities across the country, including Indian Springs, Nevada; Lowell, Massachusetts; Mishawaka, Indiana; Ottawa, Illinois; Pendleton, Oregon; and South Burlington, Vermont.

To accomplish the fraud, defendant set up a small warehouse and office space in Batavia, Illinois, where defendant hired a handful of employees to work as sales representatives and putative assemblers. Defendant and his employees then represented that KTURBO would use this Batavia facility to manufacture and assemble aeration blowers using parts sourced from domestic and foreign suppliers for municipal wastewater treatment plants. In truth, defendant saw that manufacturing and assembling blowers in the United States was too costly and took

too much time in his opinion, leading defendant to decide to have blowers fully assembled and tested in South Korea, then shipped to the Batavia facility for a short period of time before shipment to municipal wastewater treatment plants across the country.

The trial evidence further established that defendant and others working with him and at his direction lied to sales representatives, who helped sell KTURBO blowers for ARRA projects, as well as general contractors, project engineers, and municipalities who bought aeration blowers from KTURBO, believing and trusting that that defendant and KTURBO complied with ARRA. Defendant and his employees continuously lied that blowers were assembled in the United States and purposely hid the fact that blowers were coming fully assembled from Republic of Korea. These lies even made their way to the nameplates welded and riveted on the blowers shipped from Korea, each of which falsely proclaimed, "Assembled in the USA."

On February 24, 2011, law enforcement, pursuant to a search warrant authorized by a magistrate judge in the United States District Court for the Northern District of Illinois, searched KTURBO's facility in Batavia, Illinois, seizing blowers that had been fully manufactured in the Republic of Korea as well as other relevant evidence. A short time after the search, defendant returned to the Republic of Korea, where he remained until the government obtained his extradition.

## II.    FEDERAL RULE OF CRIMINAL PROCEDURE 33

A court may vacate a judgment and grant a new trial upon a defendant's motion "if the interest of justice so requires." FED. R. CRIM. P. 33; *see also United*

*States v. Berg*, 714 F.3d 490, 500 (7th Cir. 2013); *United States v. Smith*, 674 F.3d 722, 728 (7th Cir. 2012). A new trial is in the interest of justice where "the ubstantial rights of the defendant have been jeopardized by errors or omissions during trial." *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989).

"[A] defendant is entitled to a new trial if there is a reasonable possibility that a trial error had a prejudicial effect upon the jury's verdict." *United States v. Van Eyl*, 468 F.3d 428, 436 (7th Cir. 2006). Rule 33 motions are generally disfavored and courts should only grant them in "the most extreme cases." *United States v. Linwood*, 142 F.3d 418, 422 (7th Cir. 1998) (internal marks omitted). "A jury verdict in a criminal case is not to be overturned lightly, and therefore a Rule 33 motion is not to be granted lightly." *United States v. Santos*, 20 F.3d 280, 285 (7th Cir. 1994) (internal marks omitted). While the court has broad discretion in ruling on a motion under Rule 33, the Seventh Circuit has cautioned:

> The court may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable.... The evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand.... Motions for new trial based on weight of the evidence are not favored. Courts are to grant them sparingly and with caution, doing so only in those really exceptional cases.

*United States v. Reed*, 875 F.2d 107, 113 (7th Cir. 1989) (internal marks omitted).

## III. DEFENDANT'S MOTION FOR A NEW TRIAL LACKS MERIT.

### A. The Government Did Not Constructively Amend the Indictment.

"A constructive amendment of an indictment occurs when the evidence at trial 'goes beyond the parameters of the indictment in that it establishes offenses different from or in addition to those charged by the grand jury.'" *United States v. Phillips*, 745

5

F.3d 829, 832 (7th Cir. 2014) (quoting *United States v. Pigee*, 197 F.3d 879, 886 (7th Cir. 1999)). While constructive amendment violates the Fifth Amendment, "'not all variations in proof that contradict or supplement verbiage in the indictment rise to the level of constructive amendments.'" *Id.* (quoting *Pigee*, 197 F.3d at 886). Impermissible constructive amendment occurs when "the crime charged in the indictment [is] 'materially different or substantially altered at trial, [so that] it is impossible to know whether the grand jury would have indicted for the crime actually proved.'" *Id.* (quoting *United States v. Trennell*, 290 F.3d 881, 888 (7th Cir. 2002)). Defendant's arguments to the contrary, no constructive amendment of the indictment occurred in this case.

As defendant argued numerous times pretrial, he again claims that constructive amendment of the indictment occurred, suggesting that the indictment alleged that defendant had contracts directly with municipalities and the United States to provide blowers. *See* R. 180 at ¶¶1, 6. A fair reading of the plain language of the indictment demonstrates that defendant's arguments lack merit.

Paragraph 3 of the indictment alleged that defendant and others acting with him and at his direction "procured contracts for KTURBO and KTURBO USA to provide turbo blowers to municipal wastewater treatment facilities receiving stimulus funds." R. 2 at ¶3. Likewise, the indictment further alleged that defendant and his accomplices "entered into and caused to be entered into contracts on behalf of KTURBO and KTURBO USA to provide turbo blowers to municipal wastewater treatment facilities that were receiving Recovery Act stimulus funds[.]" *Id.* at ¶4.

Neither of these allegations required the government to prove at trial that defendant's contracts were directly with municipalities. Instead, these allegations were broad enough to comport with the evidence the government produced at trial, namely, that KTURBO and KTURBO USA entered into purchase orders with engineering and construction firms—who were working with municipalities—to provide turbo blowers to municipal wastewater treatment facilities.[1] While the indictment included this broader allegation than the evidence proven at trial, that does not amount to a constructive amendment. To the contrary, the "government simply supplied more technical details that easily fit within the allegations in the indictment." *United States v. Alhalabi*, 443 F.3d 605, 614 (7th Cir. 2006). Because the indictment may naturally be read to include the evidence presented at trial, defendant's claim fails. *See Phillips*, 745 F.3d at 832.

Defendant next claims that striking of Paragraph 10 of Count One of the indictment—which identified the loss amount—amounted to an impermissible constructive amendment of the indictment. *See* R. 180 at 3. Loss is not an essential element of wire fraud. *See United States v. Swanson*, 394 F.3d 520, 525-26 (7th Cir. 2005); *United States v. Leahy*, 464 F.3d 773, 786-87 (7th Cir. 2006) ("The[] [mail and wire fraud] statutes do not require the government to prove either contemplated harm to the victim or any loss."); *United States v. Howard*, 619 F.3d 723, 727 (7th Cir. 2010) ("[E]ven if an indictment names particular victims, the government need

---

[1] Defendant seemingly acknowledges as much when he observes that the "Indictment strongly implied that Defendant had actually entered contracts with the municipalities themselves." R. 180 at 3.

not prove intent to harm those named victims."); *United States v. Henningsen*, 387 F.3d 585, 590 (7th Cir. 2004) ("[F]raud does not include an element requiring a contemplated harm to a specific, identifiable victim."); *United States v. Hausmann*, 345 F.3d 952, 959 (7th Cir. 2003); *United States v. Fernandez*, 282 F.3d 500, 506-07 (7th Cir. 2002).

When an allegation is not essential element of the offense, that allegation cannot support a claim of constructive amendment. The law in the Seventh Circuit is clear on this. In *United States v. Tello*, 687 F.3d 785 (7th Cir. 2012), the Seventh Circuit rejected the claim of a constructive amendment of an alleged RICO conspiracy, *id.* at 794-76. The Court explained that "any allegation as to overt acts, including predicate acts of racketeering, that [defendant] may have committed in furtherance of the charged conspiracy, would constitute surplusage rather than an essential element of the charged conspiracy." *Id.* at 796. "Such surplus allegations thus would not support a later charge of constructive amendment based on a divergence between the acts alleged in the indictment and the acts, if any, acknowledged in the guilty plea." *Id.*; *see also United States v. Franco*, 874 F.2d 1136, 1144 (7th Cir. 1989) (rejecting claim of constructive amendment and noting that the defendant "fail[ed] to provide any authority to support his claim that unessential allegations contained in the count must be proven beyond a reasonable doubt"); *United States v. Williams*, 798 F.2d 1024, 1032-33 (7th Cir. 1986) (finding no constructive amendment where allegations were not "essential elements").

### B.     The Court Properly Admitted "Flight" Evidence During Trial.

Before trial, the government moved *in limine* for a ruling on the issue of defendant's post-search flight from the United States to the Republic of Korea. *See* R. 116 at 4-7. Specifically, the government sought to introduce evidence that, for approximately three years before law enforcement searched the KTURBO USA facility in Batavia, Illinois, defendant regularly traveled for extended periods of time to engage in work in the United States. That changed when law enforcement in executed a search at the KTURBO USA facility in Batavia, Illinois, on February 24, 2011. While law enforcement was executing the search, defendant arrived at the Batavia facility and spoke to law enforcement. He made a statement to the investigating agents and gave them permission to search his laptop computer. Several weeks after the search, on March 10, 2011, defendant boarded a plane destined for South Korea. Defendant then returned to his native country and he never returned to the United States. Over defendant's objection, the Court granted the government's motion and acknowledged that defendant remained free to present evidence "challenging the reasonableness of that inference of guilt at trial. *See* R. 132 at 1. At trial, the government presented evidence consistent with its motion, though defendant never took the Court's invitation to challenge the evidence.

Now, post-trial, defendant argues in cursory fashion that the Court erred in allowing this evidence to be admitted at trial. Defendant has not provided any additional facts, law or analysis that may support his arguments. To the contrary, defendant has a misimpression of the facts: the evidence established that defendant fled after the search of the Batavia facility, not because of the indictment. Because

defendant has not offered any meaningful reason or basis for the Court to reconsider its prior rulings, his motion should be denied. *See United States v. Mojica*, No. 12 CR 755-5, 2016 WL 3268991, at *3 (N.D. Ill. June 15, 2016).

###  C.  The Court Properly Limited Defendant Regarding "Substantial Transformation" During Closing Arguments and When Instructing the Jury.

Defendant's motion raises multiple challenges to the Court's rulings regarding substantial transformation. *See* R. 180 at ¶¶3, 6, 8, 10. Not one has merit.

First, according to defendant, the Court impermissibly offered him a "binary choice between arguing that ARRA did not apply and arguing that KTURBO satisfied ARRA's substantial transformation requirements." R. 180 at 4. According to defendant, the Court committed error because he "had plenty of evidence showing that substantial transformation had occurred, and therefore KTURBO met the requirements [of ARRA] nonetheless." *Id.*

Contrary to defendant's argument, the Court did permit defendant to argue to the jury that KTURBO had completed substantial transformation of its turbo blowers in the United States. The Court advised the parties that "this Court is going to allow in general [defendant] to make an argument, refer to those terms [substantial transformation, etc.] as they have a bearing on credibility and weight, but not to the ultimate issues to be decided." Tr. 1575. The Court explained its ruling on the "ultimate issue" question, clarifying that "[defendant] can't say … if you find that [defendant] substantially complied with X number of factors of substantial transformation, then you can't find him guilty, you cannot argue that." Tr. 1576.

This ruling was proper as it was made in the context of defendant trying to argue that the "government has all the burden to prove that, that Mr. Lee violated Buy American provision. That's, that's their burden. And to, to meet that burden they had to actually prove that defendant did not substantially …." Tr. 1577. What defendant was trying to do was add "substantial transformation" to the elements of the wire fraud charged against the defendant, *see* R. 151 at 7; *see also* R. 180 at ¶6, when that was not required under well-settled law regarding the elements of wire fraud and the Pattern Criminal Jury Instruction. This, as the Seventh Circuit has instructed, is entirely appropriate. *See United States v. Wables*, 731 F.2d 440, 449 (7th Cir. 1984) ("holding that the trial court "d[oes] not abuse its discretion by requiring the defense counsel to argue consistently with the correct law"); *see also United States v. Sanchez*, 604 F.3d 356, 358-60 (7th Cir. 2010) (same); *United States v. Doe*, 705 F.3d 1134, 1149 (9th Cir. 2013) ("The district court did not forbid Doe from making a closing argument or from presenting his public authority theory; it merely prevented him from arguing incorrect statements of law, something that is well within the court's discretion."). Consistent with this law, the Court also properly declined to give defendant's Special Instruction No. 1, *see* Tr. 1562-66, because it was not an element of the charged offense.

## D. The Court Did Not Err in Admitting Coconspirator Statements During Trial, and Did Not Err When Instructing the Jury on 18 U.S.C. § 2.

Defendant has made the cursory argument that the Court erred by granting the government's motion to admit coconspirator statements of people whom defendant claims "were not co-schemers of the defendant." R. 180 at 4-5, *see also id.*

11

at ¶13. The Court should reject this argument for several reasons. First, defendant has not identified a person he believes was impermissibly identified as a co-schemer. Second, defendant has not identified a statement he believes was improperly admitted under Federal Rule of Evidence 801(d)(2)(E). Likewise, defendant has not demonstrated that he made a timely objection to the admission of any such statement at trial. *See United States v. Franklin*, 197 F.3d 266, 270 (7th Cir. 1999) ("When a defendant fails to object in a timely fashion to the admission of evidence at trial, the defendant forfeits the issue absent a showing of plain error.").

Defendant has also argued that the Court erred when it did not "strike the charges under 18 U.S.C. § 2." Section 2, as the Court is aware, is not a standalone charge. Instead, it is a theory of liability that a person who aids or abets the commission of a crime is liable as a principal. *See* 18 U.S.C. § 2. *United States v. Newman*, 755 F.3d 543, 545-46 (7th Cir. 2014). "Aiding or abetting is a proper basis of conviction in every prosecution." *United States v. Newman*, 755 F.3d 543, 545-46 (7th Cir. 2014) (citing *United States v. Moore*, 936 F.2d 1508, 1525-28 (7th Cir.1991)). Additionally, defendant did not raise an objection to the instruction during the jury instruction conference. *See* Tr. 1523 ("[Government's Proposed Instruction] No. 21, Seventh Circuit Instruction 5.06 is given, there being no objection."); *see also* R. 123 at 22. Accordingly, defendant waived his objection to this instruction.

### E. The Court Properly Rejected Defendant's Unanimity Instruction.

Defendant argues that the Court impermissibly rejected his request for the jury to have received an unanimity instruction regarding the false representations

12

alleged to have been made as part of the scheme. *See* R. 180 at ¶7. This Court's decision to deny the requested instruction is in accordance with Seventh Circuit precedent. In *United States v. Daniel*, 749 F.3d 608 (7th Cir. 2014), the defendant in a federal fraud case argued the court should have been instructed with Pattern Criminal Jury Instruction 4.04 requiring unanimity as to a specific fraudulent act or representation, *id.* at 613. The Seventh Circuit rejected the argument, holding that the trial court did not abuse its discretion in declining to give such an instruction because a defendant's fraudulent representations and omissions are merely "the means [the defendant] used to commit an element of the crime[,]" not an element themselves. *Id.* In so holding, the Seventh Circuit joined the three other courts of appeals that have addressed this same question and all of which came to the same conclusion. *See id.* (collecting cases).

## F. The Court's Wiring Jury Instruction Did Not Violate the Law.

Defendant takes issue with the wiring instruction that the Court gave the jury, arguing that the government "alleged emails attaching specific communications," and that, as a result, "[t]he Government was required to prove what is alleged." R. 180 at ¶9. To begin with, defendant did not raise an objection to this instruction during the jury instruction conference, thereby waiving any claim of error post-trial. *See* Tr. 1528.

Even on the merits the argument fails. One sentence of government's Proposed Instruction #29 stated, "Although an item communicated interstate need not itself contain a fraudulent representation or promise or a request for money, it must carry out or attempt to carry out the scheme," quoting the Seventh Circuit's Pattern

Criminal Jury Instruction for the use of interstate communication facilities under 18 U.S.C. § 1343. This instruction was an accurate statement of the law. *See United States v. Hollnagel*, 955 F. Supp. 2d 830 (N.D. Ill. 2013); *see also Schmuck v. United States*, 489 U.S. 705, 712-24 (1989). Because defendant has offered no argument indicating how or why this instruction was inappropriately given, the argument should be rejected.

### G. The Court Properly Declined to Give Defendant's Special Instruction #3.

At trial, defendant proffered his Special Instruction #3, which would have instructed the jury that, for Counts 6 through 8, which alleged violations of 18 U.S.C. § 545, the government had to prove "that defendant Lee himself imported the blowers and not his company." R. 151 at 15. The Court declined to give the instruction. *See* Tr. 1533. Defendant has claimed this was error, but offers no precedent and no meaningful argument in support of his claim. To the contrary, the law is settled that a person may be part of a joint venture involved in a criminal offense, and need not perform every act constituting the crime charged, and that criminal liability under 18 U.S.C. § 2 extends to those who aid, abet, command, induce or procure the commission of a crime. *See United States v. Rebolledo-Delgadillo*, 820 F.3d 870, 876 (7th Cir. 2016). In this case, the evidence was more than sufficient to establish that defendant knew about the importation of fully-assembled blowers from the Republic of Korea to the United States, knew that they were mismarked, and worked to have that occur through his machinations both in the United States and abroad. *See United States v. Garcia*, 45 F.3d 196, 199 (7th Cir. 1995).

14

**H.    The Court Did Not Err in Giving Government's Instruction 25A to the Jury.**

The government proposed Instruction #25A, which read as follows: "A false or fraudulent pretense, representation or promise does not have to be made directly to the victim of the scheme. Deception of someone else can suffice if it carries out the scheme." Over defendant's objection, the Court ruled this instruction appropriate and gave it to the jury. *See* Tr. 1574. Defendant re-raises his objection, but has offered no reasoning or analysis to support his claim of error. Even if he had, however, the Court appropriately gave this instruction as it was appropriate in light of the facts and circumstances of this case, and it was an accurate statement of the law of mail and wire fraud. *United States v. Seidling*, 737 F.3d 1155, 1160-62 (7th Cir. 2013) ("This Court has found that mail fraud under 18 U.S.C. § 1341 does not require the defendant to communicate directly with his victims."); *United States v. Cosentino*, 869 F.2d 301, 304-07 (7th Cir. 1989).

**IV.    CONCLUSION**

For the reasons stated herein, the government respectfully requests that the Court deny defendant's motion under Federal Rule of Criminal Procedure 33.

Respectfully submitted,

JOEL R. LEVIN
Acting United States Attorney

By:    s/ *Patrick M. Otlewski*
PATRICK M. OTLEWSKI
MEGAN CUNNIFF CHURCH
Assistant U.S. Attorneys
219 South Dearborn St., Rm. 500
Chicago, Illinois 60604
(312) 353-5300

15

Dated: July 14, 2017