## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 12-CR-109 |
| | ) | |
| v. | ) | Judge Sharon Johnson Coleman |
| | ) | |
| HEON SEOK LEE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

The defendant, Heon Seok Lee, was charged in a 2012 indictment with five counts of wire fraud in violation of 18 U.S.C. § 1343 and three counts of smuggling mismarked merchandise into the United States in violation of 18 U.S.C. § 545. After an eight-day trial, a jury found Lee guilty on all counts of the indictment. Lee now moves this Court for a judgment of acquittal under Federal Rule of Criminal Procedure 29, for a new trial under Federal Rule of Criminal Procedure 33, or to arrest the judgment against him under Federal Rule of Criminal Procedure 34. After considering the parties' oral and written arguments regarding the post-trial motions, as well as the parties' prior motion practice and this Court's prior rulings, Lee's post-trial motions are denied for the reasons set forth below.

**Background**

Lee was indicted on February 16, 2012 on charges of wire fraud and smuggling, stemming from a scheme to defraud municipalities and their contractors by representing that turbo blowers manufactured in and imported from the Republic of Korea were substantially transformed in the United States in accordance with federal requirements governing the grant program funding the blowers' installation. Lee, the CEO of Korean manufacturer KTurbo, established an American subsidiary, KTurbo USA, and represented that KTurbo USA would assemble turbo blowers in the

1

United States using a number of American-made components. Instead, the evidence showed that Lee imported completed turbo blowers, some labeled as having been manufactured in America, from KTurbo's Korean factory, had those blowers shipped to KTurbo USA's facility, and then shipped the completed blowers to the customer. The evidence further showed that Lee directed his subordinates to falsely represent to municipalities, contractors, and EPA personnel that the blowers and their components were manufactured in the United States when in fact they were not. After an eight day trial, Lee was convicted of five counts of wire fraud and three counts of smuggling.

**Legal Standard**

A criminal defendant who has been found guilty by a jury may move for a judgment of acquittal under Federal Rule of Criminal Procedure 29. In considering a motion for judgment of acquittal, a court must "consider the evidence in the light most favorable to the prosecution, drawing all reasonable inferences in the government's favor." *United States v. Macari*, 453 F.3d 926, 936 (7th Cir. 2006) (quoting *United States v. Masten*, 170 F.3d 790, 794 (7th Cir. 1999)). "Reversal is appropriate only when, after viewing the evidence in such a manner, no rational jury 'could have found the defendant to have committed the essential elements of the crime.'" *Id.*

A court may provide a new trial to a criminal defendant found guilty by a jury "if the interest of justice so requires." Fed. R. Crim. P. 33. It is within the sound discretion of the trial judge to decide whether to grant a new trial. A defendant is entitled to a new trial if there is a reasonable possibility that trial errors had a prejudicial effect on the jury's verdict. *United States v. Van Eyl*, 468 F.3d 428, 436 (7th Cir. 2006). In determining whether to grant a new trial, courts must exercise "great caution" and be wary of second guessing the jury's determinations. *United States v. Ryan*, 213 F.3d 347, 351 (7th Cir. 2000) (quoting *United States v. DePriest*, 6 F.3d 1201, 1216 (7th Cir. 1993).

A court may arrest a judgment, after a jury verdict, if the Court concludes that it did not have jurisdiction over the charged offense. Fed. R. Crim. P. 34. The determination of whether a

Court had jurisdiction is a pure question of law distinct from the evidence presented at trial. *United States v. Boender*, 719 F. Supp. 2d 951, 953 (N.D. Ill. 2010) (Dow, J.).

**Discussion**

*1. The Motion for Arrest of Judgment*

Lee first renews his challenge to this Court's jurisdiction. As this Court has previously noted, however, Lee does not challenge this Court's general subject matter jurisdiction over criminal matters conferred by 18 U.S.C. § 3231. Instead, he asserts that this Court lacked jurisdiction to determine whether a "substantial transformation" occurred because the Court of International Trade has exclusive jurisdiction over certain civil matters that involve the definition of that term. *See generally* 28 U.S.C. §§ 1340; 1581.

The Court of International Trade is conferred by statute with exclusive jurisdiction over specifically enumerated *civil* matters. This, however, is a *criminal* case brought under this Court's statutorily conferred criminal jurisdiction. Lee offers, and this Court is aware of, no legal authority giving the Court of International Trade jurisdiction to hear criminal matters. Moreover, although Lee cites to statutes establishing the Court of International Trade's exclusive jurisdiction over certain civil matters, Lee has identified no authority suggesting that this Court lacks jurisdiction to determine whether or not a "substantial transformation" has occurred in a criminal matter. This Court accordingly concludes that it had jurisdiction over this case pursuant to 18 U.S.C. § 3231 and therefore denies Lee's motion for an arrest of judgment.

*2. The Motion for Judgment of Acquittal*

Lee challenges the sufficiency of the evidence supporting his wire fraud and smuggling convictions.

As an initial matter, this Court notes that Lee has renewed his assertion that the American Recovery and Reinvestment Act (ARRA) does not apply to KTurbo. This Court has repeatedly

emphasized that this argument is irrelevant because the prosecution in this case is premised upon fraudulent representations and smuggling and not, as Lee appears to contend, on regulatory violations.

In order to convict a defendant of wire fraud under 18 U.S.C. § 1343, the government needed to prove that (1) there was a scheme to defraud; (2) wires were used in furtherance of the scheme; and (3) Lee participated in the scheme with the intent to defraud. *United States v. Pust*, 798 F.3d 597, 600 (7th Cir. 2015) (citing *United States v. Sheneman*, 682 F.3d 623, 628 7th Cir. 2012); *United States v. Stephans*, 421 F.3d 503, 507 (7th Cir. 2005).

Lee contends that there was insufficient evidence of a scheme to defraud because the blowers in question were substantially transformed. The evidence, however, showed that the blowers in question arrived in the United States fully assembled from KTurbo's factory. Lee contends that the final installation, calibration, and testing of the blowers constituted a "substantial transformation," but the evidence at trial was more than adequate to support a jury in concluding that those activities, which took place once the fully constructed blower arrived at the jobsite, were not complex and meaningful in nature.

In a similar vein, Lee argues, for the first time, that the term "substantial transformation" is unconstitutionally vague and therefore cannot serve as the basis for his criminal conviction. Lee has offered, and this Court is aware of, no authority suggesting that the potential vagueness of a regulatory standard can call into question the constitutionality of a criminal conviction based on false representations of compliance with that standard. The evidence at trial, moreover, established that Lee made specific misrepresentations about which components of the blowers would be manufactured in the United States or where the blowers would be manufactured, the falsity of which did not depend on the interpretation of the substantial transformation standard.

Lee also asserts that the alleged fraudulent statements were not material in light of the Republic of Korea's status as a "designated country" under ARRA or the WTO agreement. A false statement is material if it has a natural tendency to influence or is capable of influencing the decision of the decisionmaking body to which it was addressed, even if it does not actually affect the decision in question. *United States v. Grigsby*, 692 F.3d 778, 785 (7th Cir. 2012). Here, the evidence, taken in the prosecution's favor, was more than adequate to establish that the victims relied on Lee's false statements concerning KTurbo's compliance with ARRA through the substantial transformation requirement. The evidence was therefore sufficient to establish those statements materiality. *Cf. United States v. Jackson*, 546 F.3d 801, 816 (7th Cir. 2008) (recognizing that a statement can be material even when the victim did not ultimately rely on it).

Lee further contends that there was insufficient evidence to support his smuggling convictions. In order to convict a defendant of smuggling under 18 U.S.C. § 545, the government needed to prove that Lee fraudulently or knowingly imported merchandise contrary to law into the United States. Lee asserts that his importation of the blowers in question was not contrary to law because 19 U.S.C. § 1304 "proscribes non-marking, not mis-marking." That argument misses the mark. Title 19, section 1304 expressly provides that "every article of foreign origin . . . imported into the United States shall be marked in a conspicuous place . . . in such a manner as to indicate to an ultimate purchaser in the United States the English name *of the country of origin of the article*." 19 U.S.C. § 1394(a) (emphasis added). It is undisputed that the "country of origin" of the blowers was the Republic of Korea. Accordingly, the blowers in question were not labelled with the "name of the country of origin of the article," and therefore were imported in violation of United States law.

Lee alternatively argues that KTurbo was the "ultimate purchaser" of the blowers imported into the United States. If an imported article will be used in manufacture, the manufacturer may be the "ultimate purchaser" if the imported article is subjected to a process which results in its

5

substantial transformation. 19 C.F.R. § 134.1(d)(1). As previously noted, however, there was sufficient evidence for the jury to conclude that the blowers in question were not substantially transformed in the United States. This Court accordingly holds that the evidence was sufficient to support Lee's convictions.

Lee also contends that this Court erred in denying Lee's motions to dismiss the indictment based on misleading grand jury testimony and misleading testimony during the extradition proceedings. These arguments, however, do not concern the sufficiency of the evidence at trial and therefore cannot be raised through a motion for judgment of acquittal. Even if this Court were to consider these arguments, moreover, they would be denied. This Court has repeatedly rejected Lee's argument that misconduct occurred before the grand jury and, in any event, any error in the grand jury proceeding is harmless in light of the petit jury's subsequent verdict. *United States v. Vincent,* 416 F.3d 593, 601 (7th Cir. 2005).

Lee's argument regarding his extradition, assuming without deciding that Lee has standing to challenge his extradition, [1] is similarly unpersuasive. As a general principle, the rule of specialty provides that an extradited defendant may only be prosecuted for the specific crimes for which he was extradited. *United States v. Rauscher*, 119 U.S. 407, 430–432, 7 S.Ct. 234, 30 L.Ed. 425 (1886); *United States v. Stokes*, 726 F.3d 888–89 (7th Cir. 2013). The specific treaty at issue here requires that the extradited individual may not be detained, tried, or punished except for "the *offense* for which extradition has been granted or a differently denominated offense based on the same facts on which extradition was granted, provided such offense is extraditable, or is a lesser included offense." Extradition Treaty Between the Government of the United States of America and the Government

---

[1] The "Rule of Specialty" is contained in the extradition treaty between the United States and the Republic of Korea. Existing Seventh Circuit caselaw suggest that Lee lacks standing to challenge violations of that treaty absent a protest from the sovereign involved. *United States v. Burke*, 425 F.3d 400, 408 (7th Cir. 2005); *but see United States v. Stokes*, 726 F.3d 888–89 (7th Cir. 2013) (questioning the extent to which *Burke* can be squared with prior Supreme Court precedent and cases from other circuits).

of the Republic of Korea, U.S.-Korea, art. 15, *entered into force* Dec. 20, 1999, T.I.A.S. No. 12,962 (emphasis added). The 20th Criminal Division of the Seoul High Court granted extradition based on Lee's alleged violations of 18 U.S.C. § 1343 and 18 U.S.C. § 545. Although minor factual variations exist between the facts presented to the Seoul High Court and the evidence established at trial, as this Court has previously held those variations did not alter the fundamental nature of the offense alleged. Lee's indictment and subsequent conviction therefore did not violate the rule of specialty.

*3. The Motion for a New Trial*

Lee moves for a new trial pursuant to Federal Rule of Criminal Procedure 33, arguing that this Court erred by permitting the government to constructively amend the indictment at trial, permitting the introduction of flight evidence, admitting co-conspirator hearsay statements, and rejecting Lee's proposed jury instructions or overruling his objections to the government's proposed jury instructions. Lee's arguments on these points are largely conclusory and present no new arguments beyond those which were presented in Lee's written and oral arguments presented at trial. Accordingly, Lee's motion for a new trial is denied based on this Court's prior written and oral rulings on these matters.

**Conclusion**

For the foregoing reasons, Lee's motion for judgment of acquittal and arrest of judgment [185] and motion for a new trial [180] are denied.

SO ORDERED.

SHARON JOHNSON COLEMAN
United States District Court Judge

DATED:  September 27, 2017